**UNITED STATES DISTRICT COURT**
**FOR THE**
**DSTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| L.A.M., a minor, by and through her<br>Natural Parents, JOHN MICHALSKI, JR.<br>and AMELIA MICHALSKI, Individually<br>and as custodial parents and next friends,<br><br>Plaintiffs,<br><br>v.<br><br>MONAHAN PRODUCTS, LLC, d/b/a<br>UPPABABY, a Massachusetts Limited<br>Liability Company,<br><br>Defendant. | Case No. |

## COMPLAINT AND JURY DEMAND

Plaintiff, **L.A.M.** (hereinafter, "L.A.M." or "Minor Plaintiff"), a minor, by and through her natural parents, **JOHN MICHALSKI, JR.** and **AMELIA MICHALSKI** (collectively "Plaintiffs"), by and through their undersigned counsel, **JOHNSON BECKER, PLLC** and **MEEHAN BOYLE, a Division of KECHES LAW GROUP, P.C.,** hereby submit the following Complaint and Jury Demand, against Defendant, **MONAHAN PRODUCTS, LLC, d/b/a UPPABABY** (hereinafter referred to as "UPPAbaby" or "Defendant") and allege the following upon personal knowledge and belief, and investigation of counsel:

### NATURE OF THE CASE

1. This is a product liability action seeking recovery for substantial personal injuries and damages suffered by L.A.M after she was seriously injured by an "UPPAbaby Bassinet stand."

2.      UPPAbaby designs, manufactures, warrants, markets, advertises, imports, distributes and sells a wide-range of "home gear for babies" - such as strollers, car seats, highchairs, and bouncers – including the subject UPPAbaby Bassinet stand (hereinafter referred to as "subject bassinet stand(s)" or "Bassinet stand(s)") that is at issue in this case.

3.      UPPAbaby touts the mobility of its Bassinet stands, stating that consumers can "[t]ake your Bassinet stand from boulevard to bedroom by snapping it into the secure and elevated Bassinet stand."[1]

4.      Despite these claims, Defendant warranted, marketed, advertised, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects.  Said defects cause significant risk of bodily harm and injury to consumers and children alike.

5.      Specifically, the Bassinet stand is designed to be used by unfolding the two (2) halves of the stand. As the stand is unfolded the two (2) wood panels at the bottom come down, creating a shelf at the bottom of the stand, and locking the stand in place. The Bassinet stand is then attached directly onto the stand. This can (and does) create a guillotine type effect which poses a laceration and amputation risk and is at odds with the standards set forth in ASTM F2194-22e.

6.      Defendant failed to warn consumers about the foreseeable risk of a child opening the bassinet stand and getting their fingers stuck in between the two (2) wooden panels which, as the stand unfolds, acts as a guillotine to their delicate fingers and can result in laceration or amputation injuries - just as it did to L.A.M.

7.      As a result, L.A.M. suffered a partial amputation to her right index finger.

---

[1] https://uppababy.com/accessories/from-birth-options/bassinet_stand-stand/ (last accessed February 25, 2026)

8.     Defendant knew or should have known of these defects but nevertheless decided to put profit ahead of safety by continuing to sell the subject bassinet stand to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Bassinet stand off the market regardless of the risk of significant injuries to L.A.M. and children like her.

9.     As a direct and proximate result of Defendant's conduct, the Plaintiffs in this case have incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFFS L.A.M., JOHN MICHALSKI, JR. & AMELIA MICHALSKI

10.     L.A.M. and her custodial parents and next friends, John and Amelia Michalski, are residents and citizens of the City of Charlotte, County of Mecklenburg, State of North Carolina, and remain domiciled in the same. Plaintiffs are therefore residents and citizens of North Carolina for the purposes of diversity prescribed by 28 U.S.C. § 1332.

11.     On or about the evening of March 26, 2023, L.A.M. sustained a partial amputation to her right index finger as the direct and proximate result of the subject bassinet stand's noncompliance with appliable industry standards - as well as Defendant's failure to warn of the same - during the normal, intended, foreseeable use of the subject bassinet stand.

## DEFENDANT MONAHAN PRODUCTS, LLC d/b/a UPPABABY

12.     Defendant Monahan Products, LLC d/b/a UPPAbaby designs, manufactures, warrants, markets, advertises, imports, distributes and sells a wide-range of "home gear for babies" - such as strollers, car seats, heigh chairs, and bouncers – including the subject UPPAbaby Bassinet stand with Model No. 0208G that is at issue in this case.

13.     Defendant is a Massachusetts Limited Liability Company incorporated in the State of New York and has a principal place of business located at 276 Weymouth Street, Rockland, Massachusetts, 02370.

14.     At the time of Minor Plaintiff's injuries and the filing of this lawsuit, the sole member of Monahan Products, LLC was Robert D. Monahan.

15.     Mr. Monahan is a resident and citizen of the Commonwealth of Massachusetts and has a registered address of 129 Jacobs Lane, Norwell, Massachusetts, 02061.

16.     Accordingly, Defendant is a resident and citizen of the Commonwealth of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

<strong><u>JURISDICTION AND VENUE</u></strong>

17.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity between the parties.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to this claim occurred in this district, and Defendant is a resident of this district.

<strong><u>FACTUAL BACKGROUND</u></strong>

19.     Defendant UPPAbaby is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the Bassinet stands at issue in this litigation.

20.     UPPAbaby designs, manufactures, warrants, markets, advertises, imports, distributes and sells a wide-range of "home gear for babies" - such as strollers, car seats, highchairs, and bouncers – including the subject UPPAbaby Bassinet stand.

21.    UPPAbaby touts the mobility of its Bassinet stands; stating that consumers can "[t]ake your Bassinet stand from boulevard to bedroom by snapping it into the secure and elevated Bassinet stand."[2]

22.    Despite these claims, Defendant warranted, marketed, advertised, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects.  Said defects cause significant risk of bodily harm and injury to consumers.

23.    Specifically, the Bassinet stand is designed to be used by unfolding the two (2) halves of the stand. As the stand is unfolded, the two (2) wood panels at the bottom come down, creating a shelf at the bottom of the stand, and locking the stand in place. The Bassinet stand is then attached directly into the stand. This can (and does) create a guillotine type effect which poses laceration and amputation risks and is at odds with the standards set forth in ASTM F2194-22e.

24.    Defendant failed to warn consumers about the foreseeable risk of a child opening the bassinet stand and getting their fingers stuck in between the two (2) wooden panels which, as the stand unfolds acts as a guillotine to their delicate fingers and can result in a laceration or amputation injuries - just as it did to L.A.M.

25.    As a result, L.A.M. suffered a partial amputation to her right index finger.

26.    Minor Plaintiff's parents purchased the Bassinet stand with reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use.

27.    Minor Plaintiff and her family used the Bassinet stand for its intended purpose and did so in a manner that was reasonable and foreseeable by Defendant.

---

[2] *Id.*

28.     Defendant's Bassinet stands possess defects that make them unreasonably dangerous for their intended use by consumers due to Defendant's noncompliance with industry standards and failure to warn of the defects described herein.

29.     Economic, safer alternative designs were available that could have prevented the amputation to L.A.M.

30.     As a direct and proximate result of Defendant's failure to warn of the dangers associated with the subject bassinet stand; its failure to adhere to industry standards; failure to timely remove a product with such defects from the stream of commerce; and its negligent design of such products, Minor Plaintiff and her family used an unreasonably dangerous Bassinet stand, which resulted in significant and painful bodily injuries.

31.     Consequently, Plaintiffs in this case seek damages resulting from the use of Defendant's Bassinet stand as described above, which has caused the Minor Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiffs reserve the right to amend this Complaint to include a claim for punitive damages according to proof.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Products Liability Inadequate Warning or Instruction**
**N.C. Gen. Stat. § 99B-1, et seq.**

32.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

33.    Plaintiffs are "claimant(s)" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

34.    Defendant designs and manufactures the Bassinet stand at issue in this case and is therefore a "manufacturer" as the term is defined by N.C. Gen. Stat. § 99B-1(2).

35.    Defendant distributes and sells the Bassinet stand at issue in this case and is therefore a "seller" as the term is defined by N.C. Gen. Stat. § 99B-1(3).

36.    At all times relevant, Defendant, as the importer/seller of the subject bassinet stand, was afforded the reasonable opportunity to inspect the subject bassinet stand in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of; specifically that the subject bassinet stand was dangerous and defective in that in violates industry standards.

37.    At all relevant times, when Defendant designed and sold the subject bassinet stand, Defendant knew or should have known that the Bassinet stand could cause the amputation injuries as described herein.

38.    Plaintiffs were not aware of the risks associated with the subject bassinet stand, nor was the risk open, obvious, or a matter of common knowledge to consumers.

39.    At the time the subject bassinet stand left Defendant's control, it did not contain adequate warnings or instructions.

40.    Defendant acted unreasonably in failing to provide any warnings or instructions about the risk that the subject bassinet stand could amputate a child's finger.

41.    The lack of adequate warnings and instructions created an unreasonably dangerous condition that Defendant knew, or in the exercise of ordinary care, should have known, posed a substantial risk of harm to Plaintiffs, who are reasonably foreseeable claimants.

42.     Alternatively, on information and belief, after the subject bassinet stand left Defendant's control, Defendant became aware of the fact, or in the exercise of ordinary care should have known, that the subject bassinet stand posed a substantial risk of harm to Plaintiffs, reasonably foreseeable claimants, and failed to give adequate warnings or instructions, or to take other reasonable actions under the circumstances, including, but not limited to, recalling the subject bassinet stand.

43.     As a proximate result of Defendant's failure to provide adequate warnings and instructions, L.A.M. suffered significant bodily injury.

**SECOND CAUSE OF ACTION**
**Products Liability – Inadequate Design or Formulation**
**N.C. Gen. Stat. § 99B-1, et seq.**

44.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

45.     Plaintiffs are "claimants" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

46.     Defendant distributes and sells the Bassinet stand at issue in this case and therefore is a "seller" as the term is defined by N.C. Gen. Stat. § 99B-1(3).

47.     At all times relevant, Defendant, as the importer/seller of the subject bassinet stand, was afforded the reasonable opportunity to inspect the subject bassinet stand in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of; specifically that the subject bassinet stand was dangerous and defective for violating industry standards.

48.     At the time that Defendant designed and manufactured the subject bassinet stand, Defendant acted unreasonably in manufacturing the subject bassinet stand, and the subject bassinet stand was defective.

8

49. The incident was the result of a failure to adhere to industry standards including, but not limited to, ASTM F2194-22e.

50. At the time the subject bassinet stand left Defendant's control, Defendant unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

51. At the time the subject bassinet stand left Defendant's control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use a product of this design.

52. With respect to the subject bassinet stand, no unusual conditions were present that would have caused an amputation of L.A.M.'s finger.

53. The subject bassinet stand was a dangerous instrumentality or substance.

54. As a result, Defendant had a duty to exercise the highest or utmost caution, commensurate with the risk of serious harm posed by the possibility that the subject bassinet stand might cause an amputation to a child's finger, including performing reasonable tests and inspections to discover latent hazards.

55. At the very least, Defendant had a duty to take reasonable care in the design and manufacture of the subject bassinet stand.

56. As a proximate result of the inadequate design of the subject bassinet stand and Defendant's unreasonable acts as described herein, the subject bassinet stand failed catastrophically during its foreseeable and intended use, resulting in significant bodily injury to L.A.M.

**THIRD CAUSE OF ACTION**
**Common Law Negligence**

57.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

58.     At all times relevant, Defendant, as the importer/seller of the subject bassinet stand, was afforded the reasonable opportunity to inspect the subject bassinet stand in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of; specifically that the subject bassinet stand was dangerous and defective in that it did not comply with industry standards nor provide adequate warnings.

59.     The subject bassinet stand was a dangerous instrumentality or substance.

60.     As a result, Defendant had a duty to exercise the highest or utmost caution, commensurate with the risk of serious harm related to the possibility that the subject bassinet stand might suffer a failure, including performing reasonable tests and inspections to discover latent hazards.

61.     At the very least, Defendant owed Plaintiffs a duty to use reasonable care throughout the design and/or sale of the subject bassinet stand, including ensuring that the subject bassinet stand was free of any potentially dangerous defects.

62.     Defendant breached its duty to Plaintiffs. Defendant was negligent, careless, and reckless in the design and/or sale of the subject bassinet stand in at least the following ways:

> a.  Unreasonably failing to implement appropriate processes, procedures, and systems throughout the testing and distribution of its Bassinet stands;
>
> b.  Failing to provide adequate warnings about the risk that the subject bassinet stand could and could cause amputation injuries;

c.  Failing to provide adequate instructions for the proper handling and use of the subject bassinet stand; and/or

d.  Failing to recall the subject bassinet stand.

63.  As the actual and proximate result of Defendant's conduct, L.A.M. suffered significant bodily injury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against the Defendant as follows:

A.  That Plaintiffs have a trial by jury on all of the claims and issues;

B.  That judgment be entered in favor of the Plaintiffs and against Defendant on all of the aforementioned claims and issues;

C.  That Plaintiffs recover all damages against Defendant, general damages and special damages, including economic and non-economic, to compensate the Plaintiffs for the injuries and suffering sustained because of the use of the Defendant's defective Bassinet stand;

D.  That all costs be taxed against Defendant;

E.  That prejudgment interest be awarded according to proof; and

F.  That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

*[Signatures on Next Page]*

11

The Plaintiffs,

By Their Attorneys,

MEEHAN BOYLE, a Division
of KECHES LAW GROUP. P.C.


*/s/Robert F. Foster*
Robert F. Foster, Esq.; MA BBO No. 697532
rfoster@meehanboyle.com
100 Cambridge Street, Suite 2101
Boston, MA, 02114
(T) 617-523-8300
(F) 617-523-0525
rfoster@meehanboyle.com

\

*In association with:*

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.  (MN ID #0397289)
*Pro Hac Vice to be Filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(T) 612-436-1800
(F) 612-436-1801
akress@johnsonbecker.com


DATED:        March 18, 2026